UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DUSTIN MARLETT, <br><br> Plaintiff, <br><br> v. <br><br> KARIN BERKHOLTZ, <br><br> Defendant. | Case No. C21-787-JCC-SKV <br><br> REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff Dustin Marlett filed a Motion for Default Judgment Against Defendant Karin Berkholtz Pursuant to Federal Rule of Civil Procedure 55(b). Dkt. 23. Ms. Berkholtz filed a Motion to Vacate Default. Dkt. 33. Both motions are opposed. Dkts. 33 & 36. Now, having considered the motions, all documents filed in support and in opposition, and the remainder of the record, the Court herein makes recommendations as set forth below.

## BACKGROUND

Plaintiff is a financial advisor with Raymond James Financial Services, Inc. (Raymond James). He filed this lawsuit in June 2021, naming Karin Berkholtz and her son Ric Berkholtz as

REPORT AND RECOMMENDATION - 1

Defendants. Dkt. 1. The Complaint includes claims for Fraud, Securities Fraud (17 C.F.R § 240.10b-5), and Unjust Enrichment/Constructive Trust. *Id*. Plaintiff's claims arose from a series of financial transactions Ms. Berkholtz engaged in with Plaintiff in the fall of 2018. Dkt. 24, ¶¶2-4. The transactions ended with a recall of the approximately $400,000 Ms. Berkholtz had deposited in a Raymond James account, most of which had at that point been transferred out of the account. *Id*., ¶¶5-6. The recall of those funds left an approximate $400,000 account debit and resulted in a fraud investigation and an arbitration award against Ms. Berkholtz and in Raymond James' favor. *Id*., ¶¶6-10. Ultimately, because only a portion of the arbitration award was paid by third-party insurance proceeds, Ms. Berkholtz did not pay any amount, and pursuant to Plaintiff's contract with Raymond James, Plaintiff bore the responsibility for the outstanding balance. *Id*. ¶¶10-11. Plaintiff remains in the process of paying this debt and arbitration-related fees, leaving him "out-of-pocket" $131,634.97 as a result of his interactions with Ms. Berkholtz. *Id.*, ¶11.

Neither Defendant responded to the Complaint or otherwise appeared in this matter and the Clerk entered default against Ms. Berkholtz and Ric Berkholtz in, respectively, September and December 2021. Dkts. 12 & 17. Because there was no further activity in the case, the Court, on March 17, 2022, ordered Plaintiff to move for entry of default judgment. Dkt. 18. Plaintiff complied with the Court's Order with a motion filed on May 4, 2022. Dkt. 23. One month later, both Defendants, proceeding pro se, submitted one-page, handwritten motions to vacate the entries of default. Dkts. 26-27. On June 16, 2022, Plaintiff entered a Notice of Voluntary Dismissal as to Ric Berkholtz. Dkt. 29.

Ms. Berkholtz retained counsel and, on July 1, 2022, filed her Motion to Vacate Default and Response to Plaintiff's Motion for Entry of Default Judgment. Dkt. 33. As set forth in that

filing, Ms. Berkholtz contends she was the victim of a "romance scam" perpetrated by a man claiming to be Peter Cetera and his purported financial director James Scott. *Id*. at 1; Dkt. 34, ¶¶2-7, 15. She asserts that Mr. Scott used her identity to open financial accounts and incur debts, and otherwise used her by having her open credit cards and brokerage accounts in her name, including the account with Raymond James. Dkt. 34, ¶¶4-6. As a result of this scam, she lost all of her life savings, has no assets, and has numerous debts. *Id*., ¶10. Ms. Berkholtz further asserts that, after seeking the help of both the police and FBI, she relocated to Minnesota in April 2020 to take care of her ailing parents, both of whom subsequently passed away, her father in October 2020 and her mother in February 2022. *Id*., ¶11. At the time a process server came to her mother's house with Plaintiff's Complaint on June 16, 2021, she was "confused, traumatized, and scared" about the romance scam and had just held her father's memorial, which had been delayed as a result of the Covid-19 pandemic. *Id*., ¶12 and Dkt. 33 at 2. She learned of the default in early May 2022, prompting the filing of her pro se motion to vacate the default. Dkt. 34, ¶12. The Court struck this earlier-filed motion as duplicative, Dkt. 35, and now considers the motion to vacate filed by counsel and, as needed following consideration of that motion, Plaintiff's motion for entry of a default judgment against Ms. Berkholtz.

DISCUSSION

A.    <u>Motion to Vacate Default</u>

The Court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). In making this determination, the Court considers "'(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default . . . would prejudice' the other party." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle ("Mesle")*, 615 F.3d 1085, 1091 (9th

Cir. 2010) (quoting *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)).  The test is disjunctive, so a court may deny a motion to set aside an entry of default if any one factor favors default. *Id*.  "Crucially, however, 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Id*. (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).  *Accord Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) ("[D]efault judgments are generally disfavored. Whenever it is reasonably possible, cases should be decided upon their merits.") (citation omitted).  Also, while the same test applies to motions seeking relief from a default judgment, the test is more liberally applied where a party seeks relief from an entry of default. *Mesle*, 615 F.3d at 1091 n.1.  *Accord Mendoza v. Wright Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986) ("The court's discretion is especially broad where, as here, it is the entry of default that is being set aside, rather than a default judgment.").  The defendant bears the burden of showing that relief from default is warranted. *Franchise Holding II, LLC*, 375 F.3d at 926.

      The Court, as discussed below, finds good cause to set aside the entry of default.

      1.    <u>Culpable conduct</u>:

      A defendant's conduct is deemed culpable where she "'received actual or constructive notice of the filing of the action and *intentionally* failed to answer.'" *Mesle*, 615 F.3d at 1092 (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001)) (emphasis in original).  Intentional does not mean merely "a conscious choice not to answer[,]" *id*., or neglect, *TCI Grp. Life Ins. Plan*, 244 F.3d at 697.  Rather, for an intentional failure to answer, a defendant "must have acted with bad faith, such as an 'intention to take advantage of the

opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1092 (quoting *TCI Grp. Life Ins. Plan*, 244 F.3d at 697).

In explaining her failure to answer, Defendant states she had just held her father's memorial, was caring for her ailing mother, and was continuing to deal with the emotional and financial fallout of the romance scam. Dkt. 34, ¶¶10-15. There is no evidence she intended to take advantage of Plaintiff, to interfere with this Court, or to manipulate the legal process. Given Defendant's circumstances at the time, the fact that she lacked the assistance of counsel, and the absence of any suggestion of bad faith, there is no basis for finding the entry of default was due to her culpable conduct. *See, e.g.*, *Mesle*, 615 F.3d at 1093-94 (finding conduct "clearly not culpable" where defendant, who did not have a lawyer, was ignorant of the law and "unable to understand correctly his legal obligations by reading and synthesizing the information on two sets of documents received months apart"); *TCI Grp. Life Ins. Plan*, 244 F.3d at 699 (finding no culpable conduct for defendant who was unfamiliar with the legal system and in a "time of extreme personal difficulty", having been widowed less than a year, being distraught and receiving medical treatment, and in the process of moving); and *Enpac, LLC v. Lucas*, No. C11-0037-BHS, 2011 WL 2149611, at *2-3 (W.D. Wash. June 1, 2011) (considering that "[t]he Ninth Circuit's rules for determining when a default should be set aside . . . 'are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation[,]'" and finding no culpable conduct for a defendant who was appearing pro se and may not have understood her legal obligations) (quoting *Mesle*, 615 F.3d at 1089).

    2.    <u>Meritorious defense</u>:

A defaulted defendant must "make some showing of a meritorious defense as a prerequisite to vacating an entry of default." *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d

508, 513 (9th Cir. 1986) (citation omitted). This burden "'is not extraordinarily heavy.'" *Mesle*, 615 F.3d at 1094 (quoting *TCI Grp. Life Ins. Plan*, 244 F.3d at 700). The defendant must allege specific, "sufficient facts that, if true, would constitute a defense[.]" *Id*. Whether the alleged facts would, in fact, serve as a defense "'would be the subject of the later litigation.'" *Id*. (quoting *TCI Grp. Life Ins. Plan*, 244 F.3d at 700).

Defendant asserts she was herself the victim of a fraud in the form of a romance scam and denies she acted with an intent to defraud. *See, e.g.*, Dkt. 34, ¶15 ("I have never intended to defraud anybody and did not know that I myself was being defrauded by Peter/James. I thought that Peter and I were in a relationship. I trusted him, and by extension his financial advisor James, and followed what they told me to do.") Defendant also observes, in relation to the unjust enrichment claim, that she never received the benefit of the funds obtained from Raymond James. *Id.*, ¶10. To the contrary, she lost all of her life savings and assets and is indebted to multiple creditors. *Id*.

Counsel for Defendant argued it was "unclear at this time whether Ms. Berkholtz actually requested to set up the account at issue, or if Peter Cetera/James Scott did this through remote access software they installed on her computer, through fraudulent misrepresentations they made to Ms. Berkholtz." Dkt. 33 at 5. Plaintiff clarifies he personally met with Defendant in his office, where she set up a Raymond James account and made transactions, and that she necessarily made all subsequent trades herself telephonically because the type of account at issue does not allow for on-line transactions. Dkt. 37, ¶¶4-8. He denies Defendant's ability to mount a defense to the allegations of fraud. He asserts Defendant made a material, false representation of fact in stating she owned a Chase account containing the $400,000 she moved into a Raymond James account, that she was aware the money in the Chase account was not hers, that Plaintiff

REPORT AND RECOMMENDATION - 6

did not know that representation was false, that Defendant intended Plaintiff to act on the false representation, that he relied on and had a right to rely on that representation, and that he suffered damages. *See Baddeley v. Seek*, 138 Wn. App. 333, 338-39, 156 P.3d 959 (2007) ("The nine fraud elements are: (1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the defendant knew the fact was false or was ignorant of its truth; (5) the defendant intended the plaintiff to act on the fact; (6) the plaintiff did not know the fact was false; (7) the plaintiff relied on the truth of the fact; (8) the plaintiff had a right to rely on it; and (9) the plaintiff had damages."). Plaintiff also asserts that, even assuming there is any truth to the alleged romance scam, Defendant is contractually liable for Plaintiff's damages based on the terms of the Master Client Agreement she signed. *See* Dkt. 24-6, Dkt. 36 at 4, Dkt. 37, ¶9.

Defendant, in reply, notes the absence of a claim alleging her contractual liability and Plaintiff's failure to respond to her argument in relation to the claim of unjust enrichment. She also attests that, when she met with Plaintiff, she believed she owned the Chase account and the money within that account. *See* Dkt. 34, ¶¶4-5 (alleging James Scott used remote access to her computer to open financial accounts and incur debts in her name, told her to open a series of credit cards and to charge them up and pay them off in order to raise her credit score, and sent cash to a brokerage account she owned) and Dkt. 39, ¶5 ("I asked James Scott whose money was in the [Chase] account, and he confirmed it was mine. I had no idea the account belonged to someone else. I thought it was the money I was owed to repay the debts incurred as a result of the credit card charges James Scott [previously] initiated[.]")

As Defendant observes, a finding of fraud entails questions of fact, including determinations of intent, that must be resolved by the trier of fact. *See N. Pac. Plywood, Inc. v. Access Rd. Builders, Inc.*, 29 Wn. App. 228, 232, 628 P.2d 482 (1981), and *State v. Bryant*, 73

Wn. 2d 168, 171, 437 P.2d 398 (1968) (citations omitted). Further, Plaintiff bears the burden of showing every element of fraud "by clear, cogent, and convincing evidence." *Baddley*, 138 Wn. App. at 339. The Court does not properly, in considering the motion to vacate default, reach a determination as to disputed facts, including, but not limited to, whether Defendant knew of the falsity of her representation regarding the Chase account.

The Court finds Defendant's showing as to a meritorious defense sufficient. That is, considering the facts in relation to the fraud and unjust enrichment claims as alleged by Defendant, the Court is satisfied "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Tr. Funds*, 794 F.2d at 513 (citation omitted). *See also TCI Grp. Life Ins. Plan*, 244 F.3d at 700 (finding showing "sufficient to assert a meritorious defense whose litigation below would not be a wholly empty exercise.")

3. <u>Prejudice</u>:

Pointing to the nearly one-year delay in Defendant's response to this lawsuit, Plaintiff asserts prejudice through further delay of the vindication of his rights and the significant amount of fees and costs incurred in moving for default judgment. However, neither delay in the resolution of the case, nor the "ordinary cost of litigating" is prejudicial. *TCI Grp. Life Ins. Plan*, 244 F.3d at 701. It is well established that "merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default." *Id*. To be prejudicial, "'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *Id*. (quoting *Falk*, 739 F.2d at 463, and citing *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996) (to be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion")).

REPORT AND RECOMMENDATION - 8

Plaintiff will not be prejudiced by setting aside the default. There is no basis for concluding his claim will be hindered or result in any tangible harm. Moreover, outside of the filing of the motion for default judgment, as was required by the Court's Order, there has been minimal activity in this case to date. This case does not present an extreme circumstance justifying a judgment by default and should be decided on the merits. For this reason and for the reasons stated above, the default is properly vacated.

B.  Motion for Entry of Default Judgment

The Court concludes the entry of default should be vacated. The Court, accordingly, finds no basis for entry of a default judgment.

## CONCLUSION

The Court, in sum, recommends Defendant's Motion to Vacate Default, Dkt. 33, be GRANTED, and Plaintiff's Motion for Default Judgment, Dkt. 23, be DENIED. Defendant should be ORDERED to file a responsive pleading to Plaintiff's Complaint within **fourteen (14) days** of an Order adopting this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be

/ / /

/ / /

ready for consideration by the District Judge on **August 26, 2022**.

Dated this 11th day of August, 2022.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10